UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10923-RGS

In re PAUL J. SALVADOR

_____

CIVIL ACTION NO. 17-10926-RGS

In re WALTER SALVADOR

MEMORANDUM AND ORDER ON
CONSOLIDATED APPEALS FROM THE BANKRUPTCY COURT'S
JUDGMENTS IN ADVERSARY PROCEEDINGS

October 3, 2017

STEARNS, D.J.

The pivotal issue on appeal is whether the Bankruptcy Judge erred in finding that the failure of Paul Salvador and Walter Salvador (Debtors) to comply with the records-keeping provision of the Bankruptcy Code, 11 U.S.C. § 727(a)(3), disqualified them from a Chapter 7 discharge. After a trial, Judge Feeney found that "Debtors [had] failed to preserve recorded information from which their financial information and business transactions could be ascertained, and, at worst, permitted their agents or children to deliberately destroy and appropriate recorded information from which their financial condition might be ascertained." *In re Salvador*, 570 B.R. 460, 476 (Bankr. D. Mass. 2017). Consequently, she allowed the

exception brought by creditor Andrew Kaplan and denied the discharge. On appeal, Debtors challenge Judge Feeney's determination that they (or someone acting on their behalf) "scrubbed" the computers of their insurance business by erasing critical files. According to Debtors, Judge Feeney based her finding on the "unequivocal[] testimony" of a forensic expert "that files were intentionally removed from the server . . . ." *Id.* Debtors contend that this was error because "there was no such testimony from [the expert] Mr. Steen." Appellant Br. at 4. The Salvadors also make a "spoliation" argument – that "[t]he Bankruptcy Court should not have allowed any information relative to the destroyed evidence to be admitted at trial" because the purchaser of the insurance business "destroy[ed] the server." Reply Br. at 3. I will affirm the Bankruptcy Court essentially for the reasons stated by Judge Feeney.

## BACKGROUND

The relevant facts are undisputed.

In 2008, David B. Kaplan made two loans to Paul and Walter Salvador in conjunction with their various businesses – $100,000 on April 30, 2008, and $120,000 on October 29, 2008. Among the Salvadors' pledged assets was a family-owned insurance agency, Salvador & Company Insurance

Agency (Salvador Co.) in which each Debtor held a 50% share.[1] When the Salvadors defaulted on the loans, Kaplan brought a collection action in the Norfolk Superior Court. Salvador Co. was named as a reach and apply defendant. Eventually, a judgment entered against the Salvadors in the amount of $744,764. In aid of execution, a judge of the Superior Court appointed a special commissioner to sell the stock and assets of Salvador Co. The Superior Court also ordered the Salvadors to turn the books and records of Salvador Co. over to a court-appointed receiver, John F. Hegarty.

The Salvadors filed for a discharge under Chapter 7 of the Bankruptcy Act on February 11, 2014. Judgment creditor/appellee Andrew Kaplan, as the personal representative of the estate of David Kaplan, opposed the Salvadors' requests for a discharge.[2]

Salvador Co. operated as an insurance agency from 1983 until February 1, 2014. App. at 169. After the Salvadors relinquished the company, Mark Salvador (Paul's son) and Christy Robbins (his niece)

---

[1] In negotiating for the loans, the Salvadors provided Kaplan with "correct and complete" financial statements for each of their companies. They valued Salvador Co. at $1,000,000.

[2] Kaplan filed identical three-count creditor complaints on July 16, 2014, against Paul J. Salvador and Walter W. Salvador under 11 U.S.C. § 727(a)(2)(A) – Count I, and 11 U.S.C. § 727(a)(3) – Count II, as exceptions to the dischargeability of the debts. Judge Feeney held Count III, filed under 11 U.S.C. § 523(a)(2)(B), in abeyance, and ultimately found the claim moot.

operated an insurance agency under the name The Insurance Connection, Inc., from the Salvador Co.'s former office at 111 Main Street in Bridgewater, Massachusetts. Paul Salvador admitted soliciting more than 200 of the Salvador Co.'s customers on behalf of The Insurance Connection, Inc.

On February 3, 2014, Hegarty, visited the premises where the Salvador Co. had been located, but found the office closed. Hegarty returned the following day and met with the Salvadors. Hegarty observed the Salvador Co.'s computers and office equipment in a large pile on the floor. Hegarty was unable to find any client files or financial records. When questioned by Hegarty, the Salvadors stated that the agency had gone "paperless" in "2010 or 2011." Dkt. #13-1, App. at 87, 175. Hegarty returned to the premises on February 6, 2017, to inspect paper records of Salvador Co. that had been stored in the basement. After inspecting these files, Hegarty concluded that they were "stale" and shipped them to a storage facility in Pepperel, Massachusetts. Hegarty removed two computers from Salvador Co. – the "main server and a desktop screen." *Id.* at 92. A forensic examiner, Brian Steen, was hired to "ascertain whether any data or computer programs could be retrieved from [the computers]." *Id.* at 93.

Steen spent a total of nine hours examining the computers on February 25, 2014. *Id.* at 211 (Steen Dep.). He prepared a summary report concluding

4

that "[a]s of 2/3/2014, there is no data in any user folder, Company folder or folder designated for scanning. This date is clearly shown on the server as the last date those folders were modified." *Id.* at 224. Steen also determined that Agency Management Software (AMS) had been uninstalled on the main server and that the AMS data folder "contained no records of any customers and no information concerning insurance policies, payments or commissions earned by the Salvador Co."[3] While Steen found that a *Quickbooks* program had also been disabled, he was able to determine that it was last accessed on February 6, 2014, at 8:11 a.m., and that data had been deleted. The *Quickbooks* data that remained was from two to three years old. Steen also testified that there were five "'users' who had accessed th[e] computer work station –'Bill [Walter Salvador], Christy, Doug, Mark [debtors' relatives] and Paul [Salvador] . . . and they had all logged on between February 3rd of 2014 and February 6th of 2014.'" *Id.* at 208.

Steen used two data recovery software programs – *EaseUS* and *GetDataBack* – in an attempt to recover missing or deleted files from the

---

[3] Salvador Co. used AMS to maintain client information, billing, and coverage files. Walter Salvador, who was responsible for entering client information into the AMS program and financial information into *Quickbooks,* testified at trial that he had stopped payments for AMS access in December of 2013. App. at 155. Salvador testified that he continued entering client information into the AMS system until at least November of 2013. *Id.* at 158.

server and computer work station. Steen concluded that numerous folders had been deleted from the computer server, and while he was able to recover the host folders, he was unable to retrieve any of their missing data. *Id.* at 207. He testified that this was consistent with a "scrubbing:" "It's quite possible a program had been used to scrub some files. That would explain the inability for either software package to recover files themselves."[4] *Id.* at 209-210.

On March 18, 2014, the Bearce Insurance Agency purchased the assets of Salvador Co. Hegarty turned the office equipment and paper records over to William Bearce, the new owner. Bearce inspected the paper records and, as did Hegarty, found them to consist only of "dead" files.

After a trial at which the Debtors[5], Hegarty, Bearse, and Steen testified, Judge Feeney ruled for the Salvadors on Count I, finding "that the Debtors

---

[4] Steen testified that "[w]e were able to say that documents had been deleted. As to the intent, that's unknown. . . . The files could have been deleted by accident, but you would have had to select quite a number of files and done it all at the same time. In the case of the server, you'd have fifty files underneath the data file and you'd have to delete them all and select them all." *Id.* at 209. He also noted that there were no files in the computer recycle bin. *Id.*

[5] At trial, Walter Salvador and Paul Salvador testified that they did not destroy files on Salvador Co.'s computer system or instruct anyone else to do so. They also testified that they did not access the Salvador Co. computers on February 3, 4, or 6, 2014.

6

did not intentionally destroy the value of their 50% ownership interests in the Insurance Agency." However, on Count II she found that Kaplan had

> sustained his burden of proof, namely that the Debtors failed to keep or preserve recorded information – information from which their financial condition or business transactions might be ascertained. Specifically, the Debtors, who were successful and sophisticated businessmen, failed to keep and preserve up-to-date records in any format.

*In re Salvador*, 570 B.R. at 476. Judge Feeney further found that the Debtors had permitted a deliberate scrub of customer and financial information from [Salvador Co.'s] computers and had turned over to the receiver only "outdated" or "dead files." *Id.* Accordingly, she denied their discharges. The Salvadors appealed.

This court heard argument on the appeals on September 28, 2017. Appearing for the Debtors, Attorney Gary Cruickshank stated that he was not challenging Judge Feeney's credibility findings with respect to the Salvadors' trial testimony. Rather, he objected to Judge Feeney's factual findings that the computer and server files had been *intentionally* deleted, and that the Salvadors were responsible. Cruickshank also argued that Judge Feeney's discussion of the law relied on three prior court decisions that on closer examination are not factually analogous to the Salvadors' case.

DISCUSSION

The district court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of the Bankruptcy Court. 28 U.S.C. § 158(a)(1). The court applies a "clearly erroneous" standard in reviewing a bankruptcy judge's findings of fact. *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995); *see also* Fed. R. Bankr. P. 8013 (the Bankruptcy Court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). "Under the clear error standard, the trier's findings of fact and the conclusions drawn therefrom ought not to be set aside 'unless, on the whole of the record, we form a strong, unyielding belief that a mistake has been made.'" *In re Carp*, 340 F.3d 15, 22 (1st Cir. 2003). The application of a Bankruptcy Code provision to a particular case poses a mixed question of law and fact, subject to review for clear error, unless the Bankruptcy Court's analysis was based on a mistaken view of the legal principles involved. *Id.*

The Bankruptcy Code, 11 U.S.C. § 727(a)(3), permits a Bankruptcy Judge to deny a discharge when a debtor fails to maintain or preserve adequate records to reasonably ascertain its financial condition.[6] *See also In*

---

[6] Section 727(a)(3) of the Bankruptcy Code specifies that a court will not discharge a debt if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including

8

re: *Frank Schifano*, 378 F.3d 60 (1st Cir. 2004). Judge Feeney, in explaining her decision to deny the Salvadors a discharge, quoted from *In re Simmons*, 525 B.R. 543 (1st Cir. BAP 2015), *aff'd*, 810 F.3d 852 (1st Cir. 2016),

> "[t]he purpose of § 727(a)(3) is to give creditors, the trustee and the bankruptcy court complete and accurate information concerning the debtor's affairs and to ensure that dependable information is provided so that the debtor's financial history may be traced." *Canha v. Gubellini (In re Gubellini),* 2009 WL 8466789, at *4 (1st Cir. B.A.P. Nov. 23, 2009) (footnote omitted) (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992)). The standard for disclosure of records for purposes of § 727(a)(3) is one of "reasonableness in the particular circumstances." *Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 68 (1st Cir. 2004) (internal quotations and citations omitted). "[A]n impeccable system of bookkeeping" is not required; however, "the records must sufficiently identify the transactions [so] that intelligent inquiry can be made of them." *Id.* at 69 (internal quotations and citations omitted). The inquiry into the reasonableness of records may include several relevant factors such as "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor or his business; and any other circumstances that should be considered in the interest of justice." *Id.* at 70 n.3 (internal quotations and citations omitted).

*In re Salvador*, 570 B.R. at 476, quoting *In re Simmons*, 525 B.R. at 547.

---

books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

Judge Feeney then set out the elements and allocation of the burdens of proof that she drew on in reaching her decision, citing *In re Mahfouz*, 529 B.R. 431, 445 (Bankr. D. Mass. 2015).

> Section 727(a)(3) involves a shift in the burden of proof. "The initial burden is on the party objecting to discharge to prove two things: (i) that the debtor 'concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information;' and (ii) that the recorded information was information 'from which the debtor's financial condition or business transactions might be ascertained.'" *Lassman v. Keefe (In re Keefe)*, 380 B.R. 116, 120 (Bankr. D. Mass. 2007). Once the objecting party has met its initial burden, the burden then shifts to the debtor to establish either that the debtor maintained adequate books and records from which his financial condition can be ascertained or that the failure to keep adequate books and records can be justified under the circumstances. *Cohen Steel Supply, Inc. v. Fagnant (In re Fagnant)*, 2005 WL 1244866, at *3 (Bankr. D. N.H. Apr. 14, 2005) (citations omitted), *aff'd*, 337 B.R. 729 (1st Cir. BAP 2006). **Intent to conceal a debtor's financial condition is not a necessary element to support an objection to discharge for failure to keep books and records**. *Thaler v. Erdheim (In re Erdheim)*, 197 B.R. 23, 29 (Bankr. E.D.N.Y. 1996) (emphasis added).

*In re Salvador*, 570 B.R. at 476. As the Supreme Court has held, a creditor is ultimately held to proof by a preponderance of the evidence in opposing a discharge. *See Grogan v. Garner*, 498 U.S. 654, 659 (1991).

Judge Feeney's application of the law is unassailable. As did Judge Feeney, I read the statute in the disjunctive, *see Loughrin v. U.S.*, 134 S. Ct. 2384, 2390 (2014) ("As we have recognized, [or]'s ordinary use is almost always disjunctive, that is, the words it connects are to be given separate

meanings."), (quoting *United States v. Woods*, 134 S. Ct. 557, 567 (2013)) – "that the debtor has concealed, destroyed, mutilated, falsified, *or* failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained." (Emphasis added). The evidence amply supported Judge Feeney's finding that the Salvadors had failed to maintain and preserve paper and electronic records from which the financial condition of Salvador Co. could have been ascertained. The testimony of Steen, Bearce, and Hegarty supported the finding, as did that of John Horan, the Salvadors' personal tax accountant. The Salvadors' trial testimony was not to the contrary, at least as to the failure to maintain and preserve the Salvador Co. financial records.

At oral argument on appeal, Attorney Cruikshank maintained that Judge Feeney misapplied the law in denying a discharge without "significant evidence of a blatant disregard of maintaining books and records." Counsel argued that the cases cited by Judge Feeney – *Lassman, In re Simmons,* and *In re Manfredonia* – presented far more egregious instances of misbehavior than anything attributed to the Salvadors. That may be true in some respects, but section 727(a)(3) does not incorporate an "egregiousness" standard, only a requirement of reasonable conduct. While Judge Feeney

did not find conclusively that the Salvadors had intentionally scrubbed the files (although if they did not, she found strong evidence that relatives did so at their behest), her finding, *see In re* Salavador, 570 B.R. at 476, that the Salvadors, who were "successful and sophisticated businessmen," had failed to reasonably maintain and preserve the required records has overwhelming support in the record.[7]

ORDER

For the foregoing reasons, the judgments denying the Salvadors discharge under 11 U.S.C. § 727(a)(3) is <u>AFFIRMED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____

---

[7] The Salvadors' spoliation "defense" never gets past the starting line for two reasons. First, as the court noted at the hearing on the appeal, the defense does not apply "to evidence which is not in the litigant's possession or custody and over which the litigant [in this case Kaplan] has no control." *Hofer v. Gap, Inc.,* 516 F. Supp. 2d 161, 170-171 (D. Mass. 2007), quoting *Townsend v. Am. Insulated Panel Co.*, 174 F.R.D. 1, 4 (D. Mass. 1997). Moreover, the adverse inference typically requires a finding of bad faith, *see United States v. Laurent,* 607 F.3d 895, 902-903 (1st Cir. 2010), and there is no evidence of bad faith here. (Bearce testified that Salvador Co.'s records, paper and electronic, had been shredded in order to protect former clients' personal information. App. at 125. Second (as Kaplan notes), the Salvadors failed to request the drawing of an adverse inference at trial and therefore waived any appellate argument on the subject. The court agrees that simply "elicit[ing] testimony from Mr. Bearce [at trial] that the evidence had been destroyed", Kaplan Reply Br. at 3, was inadequate to preserve the issue.

UNITED STATES DISTRICT JUDGE